## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| EDWARD RICHARDSON<br>393 Malvern Lakes Circle, Apt. 101<br>Fredericksburg, Virginia 22406<br>540/207-1666<br><br>Plaintiff,<br><br>v.<br><br>BOARD OF GOVERNORS OF THE<br>FEDERAL RESERVE SYSTEM,<br>        AGENCY.<br>20th and C Streets, NW, Washington, DC 20551,<br><br>Defendant. | Case: 1:16−cv−00867            (I-Deck)<br>Assigned To : Leon, Richard J.<br>Assign. Date : 5/9/2016<br>Description: FOIA/Privacy Act   Jury Demand<br><br>**Jury Trial Demanded**<br><br>**Date:** May 9, 2016 |

### COMPLAINT FOR DAMAGES, DECLARATORY RELIEF, INJUNCTIVE RELIEF, AND CIVIL PENALTIES

1.      The Plaintiff, individually, brings this action for injunctive, declaratory and monetary relief pursuant to the Privacy Act of 1974, 5 U.S.C. § 552a et seq.; the Freedom of Information Act, 5 U.S.C. § 552 et seq., and; 12 U.S.C. § 1831j et seq.

### Parties

2.      Plaintiff, Edward Richardson (hereinafter sometimes "Plaintiff" or "I") is a citizen of the United States and resides in the Commonwealth of Virginia who from June 8, 2009 to June 7, 2010 served as a law enforcement officer for the Board of Governors of the Federal Reserve System ("Defendant") in its Law Enforcement Unit ("LEU") within the District of Columbia.

3.      Defendant Board of Governors of the Federal Reserve System ("Board") is an "agency" within the meaning of 5 U.S.C. § 552a (a) (1); 5 U.S.C. § 552 (f) (1), and; a "Federal Banking Agency" within the meaning of 12 U.S.C. § 1831j (e), and is in possession and/or control of records pertaining to Plaintiff. The Board is sued herein in its official capacity.

## Jurisdiction

4.      This Court has subject matter jurisdiction pursuant to 28 U.S.C §§ 1331 and 1343; the Privacy Act of 1974, 5 U.S.C. § 552a; the Freedom of Information Act, 5 U.S.C. § 552, and; 12 U.S.C. § 1831j.

## Venue

5.      Venue is proper in this district and division pursuant to 5 U.S.C § 552a (g) (5); 5 U.S.C. § 552 (B); 12 U.S.C. § 1831j (b), and; U.S.C.A § 1391 (a) (b), because the underlying acts and conduct violating applicable laws and constitutional rights occurred in this district; and/or each defendant conducts its/his/her affairs in, or is an inhabitant of, resides in, or has an agent in this district.

## Privacy Act Of 1974, 5 U.S.C. § 552a Statute of Limitations

6.      Plaintiff alleges that the most recently known retaliatory "continuing violation" committed by the Board occurred on January 11, 2015, violating 5 U.S.C. § 552a; 5 U.S.C. § 552 (b) (6); 12 U.S.C. § 1831j; the 1st Amendment; 4th Amendment, and; 5th Amendment ("due process") of the United States Constitution. Plaintiff made discovery of this event on January 15, 2015.

7.      Plaintiff asserts that the aforementioned violations, including relevant dates, were included in his March 20, 2015 filing. *See Richardson v. Yellen, et al., 14-1673*. However, the Court in its March 8, 2016 memorandum opinion states "Mr. Richardson alleges no Privacy Act violation as recent as October 2012." Plaintiff clearly established January 11, 2015 as the most recent and otherwise known Privacy Act violation.

2

8.      The Privacy Act of 1974 has a "discovery period" under 5 U.S.C. § 552a (g) (5) precluding statute of limitation exhaustion due to disclosures and misrepresentation of facts otherwise unknown to Plaintiff.

9.      Plaintiff maintains that 5 U.S.C. § 552a (g) (5) applies to his June 2014 discovery that a total of 22 medical documents had been removed from his personnel file; his July 1, 2014 discovery of falsified allegations by Sauls and Pleasant, and; his January 15, 2015 discovery that Kevin May had removed and disclosed protected documents from Plaintiff's personnel and EEO files not subject to personal or routine use.

10.     All violations alleged herein are retaliatory continuing violations relating to Plaintiff's protected activity and his disclosures of the defendant's intentional unprofessional conduct.

11.     In relevant part, 5 U.S.C. § 552a (g) (5) states: "….. except that where an agency has materially and willfully misrepresented any information required under this section to be disclosed to an individual and the information so misrepresented is material to establishment of the liability of the agency to the individual under this section, the action may be brought at any time within two years after discovery by the individual of the misrepresentation."

### Facts

12.     The facts alleged herein are retaliatory "continuing violations" occurring between November 2009 and January 2015 and are subject to 5 U.S.C. § 552a (g) (5) ["Discovery Rule"] provision.

13.     On June 8, 2009, Plaintiff was employed by the Board, to serve as a law enforcement officer.

14.     Plaintiff was wrongfully terminated by the Board on, June 7, 2010, due to intentional and willful misconduct of  LEU Chief, Billy Sauls (hereinafter sometimes "Sauls");

3

LEU Lieutenant, Larence Dublin (hereinafter sometimes "Dublin"); LEU Sergeant, Robert Bakale (hereinafter sometimes "Bakale"); Deputy Chief of LEU Operations, Marvin Jones (hereinafter sometimes "Jones"), and; LEU Administrative Lieutenant, Tyson Coble (hereinafter sometimes "Coble").

15.     Plaintiff alleges that he was terminated due to false accusations that he had failed to provide medical documentation supporting his disability related calloffs.

16.     Ironically, in a final decision to uphold Plaintiff's termination during appeal, Board Ombudsman, Margaret Shanks, informed Plaintiff that he was not terminated for calloffs, but for tardies, violating Plaintiff's right to due process.

17.     Plaintiff alleges that he was never served with dates alleging tardies by any Board official.

18.     Plaintiff further alleges that Board EEO Counselor, Andre Smith, sought to retrieve dates of any alleged tardies from LEU personnel for over a month following Plaintiff's termination, and was never provided with such information.

19.     In or around October 2009, Plaintiff made a verbal request to Bakale for a reasonable accommodation. Bakale informed Plaintiff he would relay the request to Dublin. Plaintiff's request was to support his disability known to the Board, Bakale, Sauls, Coble, Jones, and Dublin.

20.     In or around November 2009, Plaintiff made a second verbal request to Bakale for a reasonable accommodation. Both of Plaintiff's reasonable accommodation requests went unacknowledged by the Board, Jones, Dublin, Sauls, Bakale, and Board employee relations specialist, Kevin May (hereinafter sometimes "May").

4

21.     Plaintiff alleges that in retaliation for making several reasonable accommodation requests, Jones, Sauls, Coble, Dublin, Bakale, and May, conspired with one another to remove numerous medical documents from Plaintiff's personnel file to promote an adverse action against him.

22.     Plaintiff alleges, *inter alia*, that he was subjected to harsh name calling and forced to work three separate shifts weekly while no other LEU officers were forced to do so.

23.     In or around November 2009 and subsequent to Plaintiff's reasonable accommodation requests, Bakale confronted and falsely accused Plaintiff of failing to provide supporting medical documentation for several of his disability related calloffs that Plaintiff had in fact provided documentation for.

24.     These daily harassing accusations continued until Plaintiff's termination from Board employment on June 7, 2010.

25.     In or around April 2010, Plaintiff was summoned to Coble's office where a meeting was held between Coble, Bakale, and Plaintiff. Plaintiff was accused of failing to provide medical documentation supporting 5 of his calloffs, of which Plaintiff had provided documentation for.

26.     Plaintiff alleges he was threatened by Coble and Bakale with disciplinary action and termination due to the missing medical documents.

27.     Plaintiff noticed that 2 of the alleged dates were pre-approved and no supporting documentation was needed.

28.     Plaintiff notified Dublin and Jones of the missing medical documentation immediately following his meeting with Coble and Bakale.

29.     It was unknown to Plaintiff at the time of his notification that Jones and Dublin were aware of Plaintiff's medical document removal as both were directly involved.

30.     On May 12, 2010, Plaintiff was summoned to a meeting with Sauls who informed Plaintiff that he had 15 calloffs without supporting medical documentation. Plaintiff directly refuted this accusation and informed Sauls that his medical documents were being intentionally removed from his personnel file.

31.     Prior to entering Sauls' office, Plaintiff observed that Coble and LEU Assistant Chief, Charles O'Malley (hereinafter sometimes "O'Malley") were both in a meeting with Sauls.

32.     When Coble exited Sauls' office, Plaintiff observed his personnel file in Coble's possession as he could see his name written on the file folder.

33.     This is clear evidence that from April 2010 to May 12, 2010, the day Plaintiff met with Sauls, an additional 10 medical documents had been intentionally removed from Plaintiff's personnel file to promote an adverse action against him.

34.     On June 7, 2010, Plaintiff was terminated from Board employment with the accusation that he had not provided supporting medical documents for his disability related calloffs.

35.     Sauls, in his sworn EEOC affidavit, states that Plaintiff possessed 22 calloffs with no supporting documentation.

36.     This supports evidence that between May 12, 2010 (the meeting with Sauls) and June 7, 2010, an additional 7 medical documents had been intentionally removed from Plaintiff's personnel file.

37.     Sauls' EEOC affidavit supports his direct involvement in the intentional removal of Plaintiff's medical documents.

6

38.    The removal of 7 additional medical documents was unknown to Plaintiff at the time of his June 7, 2010 termination. During Plaintiff's termination meeting, he was never advised as to the total number of medical documents that had been removed from his file.

39.    Plaintiff alleges that he alerted Kevin May of the medical document removal on May 14, 2010 and June 7, 2010.  May took no action to initiate an investigation of Plaintiff's complaint.

40.    May, a Board employee relations specialist had a duty to investigate Plaintiff's complaint of missing medical documentation.

41.    Defendant May, in his June 26, 2012 deposition, disclosed his knowledge of Plaintiff's medical documentation removal.

42.    Dublin, Jones, and Sauls each had a duty to investigate Plaintiff's missing medical documentation complaints.

43.    Sauls admitted to conferring with May after he and Plaintiff met on May 12, 2010; stating that it was decided that Plaintiff would be terminated from Board employment. This supports evidence that May was aware of the medical documentation removal prior to meeting with Plaintiff on May 14, 2010 and prior to issuing Plaintiff's June 7, 2010 termination.

44.    Dublin in sworn testimony stated that he referred Plaintiff's complaint of missing medical documentation to Jones. Plaintiff alleges that Dublin had the decision making authority to initiate an investigative inquiry into Plaintiff's missing medical documentation complaint.

45.    Jones stated that Plaintiff had in fact complained to him of medical documentation being intentionally removed from his personnel file, but instead took Coble's word that Plaintiff simply had failed to turn in medical documents to support his calloffs and that there was no need to investigate Plaintiff's complaint.

7

46.    Plaintiff asserts that his personnel file containing medical documents had a right to privacy and were protected by the Privacy and Freedom of Information Acts, not to mention medical file storage provisions under the Rehabilitation Act of 1973 that covers Plaintiff's disability.

47.    Plaintiff asserts that his personnel and medical files were subject to numerous unlawful searches with selected documents from those files being seized by Board personnel who should not have had access to Plaintiff's files to begin with; therefore, clearly violating Plaintiff's 4th Amendment rights under the United States Constitution.

48.    Additionally, Plaintiff's personnel and medical files are 5 U.S.C. § 552 (b) (6) exempt and gaining access to and releasing information from these files violated this provision.

49.    Plaintiff's personnel file containing his medical documents was kept in what Coble called an "unlocked" file cabinet drawer inside of his office that all LEU sergeants had access to. Coble's testimony was only to shift blame.

50.    Dublin alleges that Plaintiff's medical documents were in a "locked" file cabinet drawer inside of Coble's office.

51.    Plaintiff asserts that locked or unlocked, the manner in which his medical documents were kept violated the Privacy Act of 1974, 5 U.S.C. § 552a, and; the Rehabilitation Act of 1973; proving the Board's system of records to be defective.

52.    The Rehabilitation Acts requires that "employers keep all medical records and information confidential and in separate medical files." Plaintiff and his disability, including medical records, are of a protected class.

53.    On July 1, 2014, Plaintiff [discovered] that in 2010 and 2011, Sauls and Board OIG Senior Special Agent, Albert Pleasant IV (hereinafter sometimes "Pleasant"), had initiated a

fictitious spoofing investigation against Plaintiff alleging that he was involved in a falsified spoofing scandal against the Board. Plaintiff was engaged in protected activity during relevant times.

54.     These alleged events occurred subsequent to Plaintiff's termination in which Plaintiff had no apparent knowledge.

55.     Plaintiff discovered that Sauls and Pleasant, through a malicious misrepresentation of facts and under penalty of perjury, utilized 5 U.S.C. App. 3 § 6 (a) (4) of the O.I.G Act to obtain Plaintiff's cellular records without his knowledge, directly violating the Electronic Communications Privacy Act ["ECPA"] and Plaintiff's constitutional rights.

56.     5 U.S.C. App. 3 § 6 (a)(4) pertains to information obtained only from federal agencies and not an individual's cellular records. Far from speculation, this was in fact reported by Pleasant's and Sauls' defense Counsel in *Richardson v. Yellen, et al., 14-1673*.

57.     Plaintiff asserts that Pleasant and Sauls then released his cellular records and their contents to O'Malley and non-law enforcement personnel of the Board, including Dick Anderson, Keisha Hargo, William Spaniel, and Allison Dichoso, violating the Freedom of Information Act, 5 U.S.C. § 552 (b) (7) (C).

58.     Former LEU Senior Law Enforcement Officer, DeBora Burford (hereinafter sometimes "Burford") was threatened with criminal prosecution by Pleasant and Kevin May if she disclosed the contents of Pleasant's falsified O.I.G report. Burford was involved in ongoing EEO activity and was also falsely accused by Pleasant and Sauls of being involved in the fictitiously alleged spoofing scandal.

59.     Burford, fearing severe retaliation from the Board, did not release the contents of Pleasant's OIG report to Plaintiff until July 1, 2014.

60.     On January 15, 2015, Plaintiff [discovered] that Kevin May, by choice, selected various confidential documents from Plaintiff's personnel file; removed those documents from Board property, and; converted them to his personal use by sending them to JaCina Stanton, Esq. of the Attorney Grievance Commission of Maryland on January 11, 2015.

61.     The wrongful disclosure included Plaintiff's termination and denial of termination appeal and was disclosed without Plaintiff's consent.

62.     May, without Plaintiff's knowledge or consent, disclosed to Ms. Stanton various protected documents within Plaintiff's active and ongoing EEO file.

63.     In fact, May informed Ms. Stanton that he "would be happy" to remove additional documents from Plaintiff's personnel and EEO files to further damage Plaintiff's character, clearly displaying his content and willingness for violating clearly established laws.

64.     May had no right to search and seize documents from Plaintiff's protected files, removing them from Board property, thereby converting them to his "personal use."

65.     The Attorney Grievance Commission complaint against May solicited no response from the Board and definitely did not solicit documents from Plaintiff's protected files.

66.     Although Plaintiff displays only the front page of May's EEO affidavit as Exhibit F, page 288 of the R.O.I., May, however, provided Ms. Stanton with the entire document. This is evidence that May was given access to Plaintiff's EEO R.O.I.

67.     The Privacy Act Notice clearly outlines "routine use" as matters involving the "Agency," not for those "private and confidential" matters involving agency employees.

68.     In *Richardson v. Yellen, et al*, defense counsels' did not deny May's actions and contended that the documents within Plaintiff's personnel and EEO files were "routine use" and

that May had a right to access, remove, and make use of documents within Plaintiff's personnel and ongoing EEO activity files without Plaintiff's consent.

69.     Plaintiff asserts that both his personnel and EEO files are protected by the Privacy Act of 1974, the Freedom of Information Act, and the Fourth Amendment of the United States Constitution and Plaintiff has a reasonable expectation of privacy to the documents contained in both.

70.     Moreover, Plaintiff reported to Bakale and Dublin that LEU Lieutenant, James McCoy, sent a mass email to Board Management Division personnel containing Plaintiff's medical information.

71.     In initial sworn testimony, Bakale and Dublin both denied knowledge of Plaintiff having reported the email disclosure. However, in subsequent depositions, Bakale states that he reported Plaintiff's disclosure complaint to Dublin. Dublin admits that Plaintiff's disclosure complaint was substantiated.

72.     Plaintiff reported the mass disclosure to Kevin May on May 14, 2010. May, however, rejected Plaintiff's complaint and took no further action.

73.     Moreover, Marvin Jones, in an act of retaliation, falsified a suspension notice dated May 20, 2010, alleging that Plaintiff was suspended from his law enforcement duties on May 22 and 24, 2010 due to a fictitiously alleged breach of security.

74.     Plaintiff alleges that he was never presented with a notice of suspension by Jones, May, or any other Board official. Nor was Plaintiff suspended from his duties as a Board law enforcement officer.

75.     Plaintiff provides pay stud exhibits proving his point.

76.    Jones placed the falsified suspension notice into Plaintiff's personnel file and also provided this document to the EEO for inclusion in the Report of Investigation under a misrepresentation of facts.

77.    Plaintiff asserts that all named individuals (with the exception of Ms. Stanton) are or were employed by the defendant.

78.    The actions of the defendant and its employees (current and past) named herein had an adverse effect on Plaintiff's professional and personal characters.

79.    As a direct result of the defendant's actions and named employees thereof, Plaintiff has involuntarily remained unemployed since his June 7, 2010 termination from Board employment.

80.    Plaintiff received notification by the D.C. Department of Corrections that he was ineligible for employment due to falsified information contained in his Board personnel file.

81.    As a direct result of the defendant's actions and named employees thereof, Plaintiff has experienced psychological trauma to a degree that has resulted in a post traumatic stress disorder diagnosis.

82.    Plaintiff has no contact with law enforcement personnel and very limited contact with government personnel due to reoccurring intrusive memories of the intentionally malicious and outright atrocious events exhibited against him by the defendant and named employees thereof.

83.    Of relevant note and subsequent to Plaintiff's termination and through unsolicited contact, former LEU Senior Officer and Disabled U.S. Army Combat Veteran, David Galloway (hereinafter sometimes "Galloway"), called Plaintiff frantically alleging that he had just been

terminated from Board employment due to allegations that he had failed to provide medical documentation supporting his disability related call-offs.

84. Galloway stated that he had in-fact turned in medical documentation supporting each and every call-off and that the documents were intentionally removed from his medical file to promote an adverse action against him.

85. Galloway also stated that the Board insisted he sign a severance agreement that would offset any liability against the Board. Signing such an agreement would also waive any and every right afforded to Galloway in filing an EEOC administrative complaint and subsequent civil action in Federal District Court.

86. Galloway, not knowing his rights and with 2 small children, spouse, and home mortgage, signed the agreement.

87. Plaintiff, also a Disabled U.S. Army Combat Veteran, was presented with an illegal severance agreement by Kevin May during his June 7, 2010 termination that waived his rights and any liability against the defendant.

88. Knowing the severance agreement to be illegal, Plaintiff refused to sign the document.

89. Additionally, the EEOC has taken a clear stand on illegal severance agreements, holding that employees who sign illegally severance agreements can still pursue administrative claims in the EEOC.

## Whistleblower Retaliation Under 12 U.S.C. § 1831j

90. Plaintiff's 2-year statute of limitations under 12 U.S.C. § 1831j has not exhausted in the instant case.

91.     Plaintiff made several discoveries of retaliatory "continuing violations" in June and July 2014, and on January 15, 2015. With regard to the discoveries in 2014, Plaintiff reported this misconduct to the Office of Special Counsel ("OSC").

92.     In return correspondence, the OSC noted that the Board and its employees are exempt from the Whistleblower Protection Act ("WPA") and Prohibited Personnel Practices codified 5 U.S.C. § 2302. Plaintiff has exhausted any and all remedies under the OSC. [*See Exhibit A*].

93.     Plaintiff has alleged and realleges that in previous filings, the Board has admitted to and took ownership of the intentional misconduct on behalf of Sauls, Pleasant, May, Jones, Dublin, Coble, and Bakale, who all engaged in unlawful activities against Plaintiff outside the scope of their employment.

94.     Plaintiff further alleges that the defendant and employees thereof maliciously obfuscated intentional retaliatory conduct from Plaintiff in an effort to use Plaintiff as a scapegoat all while destroying his professional and personal characters.

95.     Plaintiff's 2-year statute of limitations is tolled under 12 U.S.C. § 1831j because Plaintiff had no way of knowing of the continuing retaliation.

96.     Furthermore, the unlawful retaliation against Plaintiff by the defendant and employees thereof was a direct result of Plaintiff's reasonable accommodation requests under the Rehabilitation Act of 1973 and for his engagement in protected activity.

### Materially False and Intentionally Perjurious Testimony

97.     Employees' of the defendant, in bad faith, provided a high degree of intentionally contradicting and discrepancy laden testimony that Plaintiff has a right to exploit and exhibit to further fortify his claims.

98.     Materially false statements made by the Board and employees thereof have been proven to be professionally and personally damaging to Plaintiff, and were made in connection to a retaliatory scheme as a result of Plaintiff's protected activity and disclosures.

99.     Plaintiff asserts that those federal employees who knowingly and willingly make materially false and misleading statements under oath during an official EEO investigation can be held accountable under 18 U.S.C. § 1001 (false statements) and 18 U.S.C. § 1621 (perjury), as exhibited by the U.S. Securities and Exchange Commission, "Perjury in Official EEO Investigation," Case No. OIG-447 (2006).

100.    A falsification is material under 18 U.S.C. § 1001 "if it has a natural tendency to influence, or was capable of influencing." *United States v. Harrod*, 981 F. 2D 1171, 1175 (10th Cir. 1992); *see also United States v. Gaudin*, 551 U.S. 506, 509 (1995).

101.    Likewise, the MSPB has affirmed a number of cases whereby employees where severely disciplined for making false statements under oath in administrative proceedings.

102.    See, e.g., *Carlton v. Dept. of Justice*, 103 M.S.P.R. 29 (2006); *Hidalgo v. Dept. of Justice*, 93 M.S.P.R. 645 (2003), and; *Southers v. Veterans Administration*, 36 M.S.P.R. 213 (1988).

103.    See also U.S. Court of Appeals case, *United States v. Smith*, No. 03-4467 (4th Cir. 2004).

104.    Each of the defendant's employees named herein, past and current, represent[s] a position of public trust and each intentionally and willfully violated laws they swore to uphold.

### First Cause of Action - Privacy Act of 1974/Freedom of Information Act
### (Unlawful Access to and Removal of Plaintiff's Medical Documents)

105.    Plaintiff repeats and realleges the allegations of the complaint.

106.    On 22 individual counts, Plaintiff's medical documents were both intentionally and negligently removed from his personnel file by agents of the Board to promote an adverse action, violating 5 U.S.C. § 552a; 5 U.S.C. § 552, and; the Rehabilitation Act of 1973.

107.    Under this cause of action, Plaintiff seeks maximum compensation on 22 individual counts that represent the known number of medical documents that were intentionally removed from Plaintiff's file. The Board's actions constituted a clearly unwarranted invasion of personal privacy under exception 6 of 5 U.S.C. § 552.

108.    The manner in which the Board maintained Plaintiff's personnel file and medical records violated 5 U.S.C. § 552a (b), (d), (e) (10); 5 U.S.C. § 552 (b) (6); the Rehabilitation Act of 1973, and; the Board's Statement of Responsibility for Handling Personally Identifiable Information. [*See Exhibit E*].

109.    Plaintiff's discovery of 7 additional medical documents having been removed from his file did not occur until June 2014, which is a continuing violation from previous retaliatory acts against Plaintiff. 5 U.S.C. § 552a (g) (5) is applicable to Plaintiff's discovery and his cause of action is timely.

110.    Plaintiff has exhausted all required and available administrative remedies.

111.    As a result of the Board's violation of the Privacy Act of 1974 and the Freedom of Information Act, Plaintiff has suffered adverse and harmful effects, including, but not limited to, mental distress, emotional trauma, embarrassment, humiliation, and lost or jeopardized present and future financial opportunities.

112.    Plaintiff has a legal right under 5 U.S.C. § 552a and 5 U.S.C. § 552 to obtain the monetary, declarative and injunctive relief he seeks against the Board.

**Second Cause of Action**
**Privacy Act of 1974/Freedom of Information Act/12 U.S.C. § 1831j**

### (Illegal Access to and Disclosure of Plaintiff's Personnel File and EEO Documents)

113.    Plaintiff repeats and realleges the allegations of the complaint.

114.    By letter dated January 11, 2015, Plaintiff, through his own January 15, 2015 discovery, was provided with indisputable evidence that Board employee, Kevin May, unlawfully accessed and searched Plaintiff's protected personnel file releasing falsified character damaging documents from that file to the Attorney Grievance Commission of Maryland.

115.    In the same event, Kevin May, unlawfully accessed and searched Plaintiff's protected ongoing EEO file, releasing documents from that file to the Attorney Grievance Commission of Maryland.

116.    Plaintiff, on good authority, alleges that Kevin May removed the selected documents from Board property; taking the documents to his home, where; he mailed those documents to the Attorney Grievance Commission of Maryland with malicious intent, using his home address.

117.    The Board, in its July 27, 2015 filing under *Richardson v. Yellen, et al, 14-1673*, clearly states that it gathered these documents for purposes and behaviors such as those that Kevin May had engaged.

118.    Plaintiff alleges that he was not under investigation by the Attorney Grievance Commission of Maryland and nor did any official of said Agency requests documents from Plaintiff's personnel and EEO files. It was Kevin May who was under investigation. May retaliated against Plaintiff due to Plaintiff's disclosures.

119.    Documents contained within Plaintiff's personnel and EEO files were protected at the time of Kevin May's unlawful access and disclosure under 5 U.S.C. § 552a and 5 U.S.C. § 552 (b) (6).

17

120.    In violation of sections (b); (d), and; (e) (10) of the Privacy Act, the Board failed to secure written authorization from Plaintiff prior to providing the specific information detailed above. Nor was disclosure permitted by a routine exception. The Board's actions constituted a clearly unwarranted invasion of personal privacy under exception (b) (6) of 5 U.S.C. § 552.

121.    The Board violated its own Statement of Responsibility for Handling Personally Identifiable Information. [*See Exhibit B*]. 5 U.S.C. § 552a (g) (5) is applicable to Plaintiff's discovery and his cause of action is timely.

122.    Plaintiff has exhausted all required and available administrative remedies.

123.    As a result of the Board's violation of the Privacy and Freedom of Information Acts, Plaintiff has suffered adverse and harmful effects, including, but not limited to, mental distress, emotional trauma, embarrassment, humiliation, and lost or jeopardized present and future financial opportunities.

124.    Plaintiff has a legal right under the Privacy Act of 1974, 5 U.S.C. § 552a; the Freedom of Information Act, 5 U.S.C. § 552, and; 12 U.S.C. § 1831j to obtain the monetary, declarative, and injunctive relief he seeks against the Board.

### Third Cause of Action - Privacy Act/Freedom of Information Act/12 U.S.C. § 1831j (Retaliatory Email Disclosure of Plaintiff's Medical Information)

125.    Plaintiff repeats and realleges the allegations of the complaint.

126.    Violating 5 U.S.C. § 552 (b) (6), McCoy knowingly and intentionally released Plaintiff's medical information in a mass email to Board personnel in retaliation against Plaintiff's missing medical documentation disclosures.

127.    McCoy was aware of Plaintiff's disclosures concerning his medical documentation as McCoy was Watch Commander on the evening shift, which was one of three different shifts that Plaintiff (and only Plaintiff) was forced to work.

128.    Bakale and Dublin initially lied about Plaintiff's complaint of the mass disclosure, but subsequently admit under deposition that Plaintiff did in fact make disclosure and that no action was taken. Dublin, in his deposition admits that Plaintiff's complaint was valid.

129.    Plaintiff alleges that Kevin May rejected his complaint and did so without having conducted an investigation into the matter. May mentions his rejection in testimony.

130.    Plaintiff has exhausted all required and available administrative remedies.

131.    As a result of the Board's retaliatory actions under 12 U.S.C. § 1831j, and for violating the Privacy Act of 1974 and 5 U.S.C. § 552 (b) (6), Plaintiff has suffered adverse and harmful effects, including, but not limited to, mental distress, emotional trauma, embarrassment, humiliation, and lost or jeopardized present and future financial opportunities.

132.    Plaintiff has a legal right under the Privacy Act of 1974, 5 U.S.C. § 552a; the Freedom of Information Act, 5 U.S.C. § 552, and; 12 U.S.C. § 1831j to obtain the monetary, declarative, and injunctive relief he seeks against the Board.

### Fourth Cause of Action – Privacy Act of 1974/12 U.S.C. § 1831j
### (Falsified Disciplinary Action and Suspension Notice within Plaintiff's Personnel File)

133.    Plaintiff repeats and realleges the allegations of the complaint.

134.    Jones alleges that on May 22 and 24, 2010, Plaintiff was suspended from his law enforcement duties due to an alleged breach of security.

135.    Plaintiff asserts that he had no knowledge of an alleged suspension and only discovered this information in a falsified document contained within the EEO Report of Investigation ["R.O.I"] that was written by Jones.

136.    Plaintiff offers Jones' suspension without pay notice as Exhibit B and Plaintiff's own pay advices displaying May 22 and 24, 2010 as Exhibit C. Plaintiff worked on the alleged suspension dates.

137.    Due to the fact that Plaintiff was never suspended or presented with the notice, his due process rights were nonetheless violated as the document was placed into Plaintiff's personnel file as a disciplinary action, also violating his appeal rights.

138.    The verbiage contained within the notice of suspension is also intentional falsified misrepresentation.

139.    The Board placed the falsified suspension notice in Plaintiff's personnel file and knowing submitted this information to the EEOC as an intentional misrepresentation of facts, which is how the document was included in the R.O.I.

140.    12 U.S.C. § 1831j and 5 U.S.C. § 552a (g) (5) are applicable to Plaintiff's discovery and his cause of action is timely.

141.    Plaintiff has exhausted all required and available administrative remedies.

142.    As a result of the Board's retaliatory actions under 12 U.S.C. § 1831j and for violating 5 U.S.C. § 552a, Plaintiff has suffered adverse and harmful effects, including, but not limited to, mental distress, emotional trauma, embarrassment, humiliation, and lost or jeopardized present and future financial opportunities.

143.    Plaintiff has a legal right under the Privacy Act of 1974, 5 U.S.C. § 552a, and; 12 U.S.C. § 1831j to obtain the monetary, declarative, and injunctive relief he seeks against the Board.

### Fifth Cause of Action - 12 U.S.C. § 1831j
### (Retaliation against Plaintiff's Disclosures of Missing Medical Documentation)

144.    Plaintiff repeats and realleges the allegations of the complaint.

145.    Plaintiff was undeniably subjected to retaliation because he made more than several disclosures to the Board and its agents or employees that medical documents were being intentionally removed from his file.

20

146.    The Board does not deny the allegations and even accepts them. More importantly, Plaintiff suffered an adverse action as a result of the document removal. Plaintiff has been unemployed since his termination from Board employment, and his current unemployment status is due to continuous retaliation by the Board.

147.    Under this cause of action, Plaintiff seeks maximum compensation on 22 individual counts that represent the known number of medical documents that were intentionally removed from his file.

148.    Plaintiff's discovery of 7 additional medical documents having been removed from his file did not occur until June 2014, which is in fact a retaliatory continuing violation from previous retaliatory acts. 12 U.S.C. § 1831j and 5 U.S.C. § 552a (g) (5) are applicable to Plaintiff's discovery and his cause of action is timely.

149.    Plaintiff has exhausted all required and available administrative remedies.

150.    As a result of the Board's retaliatory actions under 12 U.S.C. § 1831j, Plaintiff has suffered adverse and harmful effects, including, but not limited to, mental distress, emotional trauma, embarrassment, humiliation, and lost or jeopardized present and future financial opportunities.

151.    Plaintiff has a legal right under 12 U.S.C. § 1831j to obtain the monetary, declarative, and injunctive relief he seeks against the Board.

### Sixth Cause of Action – Privacy Act/Freedom of Information Act/12 U.S.C. § 1831j (Board's Illegal Search, Seizure, and Dissemination of Plaintiff's Cellular Records)

152.    Plaintiff repeats and realleges the allegations of the complaint.

153.    By way of July 1, 2014 discovery, Plaintiff alleges that Pleasant and Sauls unlawfully obtained his cellular records, searched those records, and disseminated those records

to non-law enforcement personnel of the Board, including William Spaniel, Allison Dichoso, Keisha Hargo, Dick Anderson, and Charles O'Malley, without Plaintiff's knowledge.

154.    Pleasant and Sauls had made Plaintiff a suspect in a fictitious investigation due to Plaintiff's engagement in protected activity.

155.    It was discovered by Plaintiff that Sauls and Pleasant had accused Plaintiff of vandalizing the vehicles of several Board employees who were also engaged in protected activity.

156.    Using Plaintiff as a scapegoat, and without his knowledge, the Board did not release relevant information concerning threatening notes referencing the victims' ongoing EEO activity that were found at the crime scenes.

157.    Pleasant and Sauls attempted to initiate criminal prosecution procedures against Plaintiff with four individual law enforcement agencies, all without Plaintiff's knowledge.

158.    Burford was threatened with retaliation if she released any information contained within Pleasant's OIG report. This serves as the purpose why Plaintiff was never notified of any of the retaliatory continuing violations against him until July 1, 2014.

159.    Abusing their authority, Pleasant and Sauls used 5 U.S.C. App. 3 § 6 (a) (4) of the OIG Act to obtain Plaintiff's cellular records, intentionally violating the Electronic Communications Privacy Act ["ECPA"].

160.    12 U.S.C. § 1831j, 5 U.S.C. § 552 (7) (C), and 5 U.S.C. § 552a (g) (5) are applicable to Plaintiff's discovery and his cause of action is timely.

161.    Plaintiff has exhausted all required and available administrative remedies.

162.    As a result of the Board's retaliatory actions under 12 U.S.C. § 1831j and for violating 5 U.S.C. § 552a and 5 U.S.C. § 552, Plaintiff has suffered adverse and harmful effects,

including, but not limited to, mental distress, emotional trauma, embarrassment, humiliation, and lost or jeopardized present and future financial opportunities.

163.    Plaintiff has a legal right under the Privacy Act of 1974, 5 U.S.C. § 552a; the Freedom of Information Act, 5 U.S.C. § 552, and; 12 U.S.C. § 1831j to obtain the monetary, declarative, and injunctive relief he seeks against the Board.

## Agency System of Records

164.    Plaintiff alleges that the Board maintains a system of records that prohibit disclosure of personally identifiable records unless such disclosure is made by written request or with the consent from the individual to which the records pertain.

165.    Plaintiff alleges that he did not provide the Board or any of its agents or employees with consent nor did he sign a written request for the release of any documentation alleged of disclosure within this complaint.

166.    The Board violated its own established policies and procedures, not to mention clearly established laws.

## Demand for Jury Trial

167.    Based on the posited facts and the malicious and atrocious actions of the defendant and its employees that brought these facts into existence, Plaintiff hereby demands trial by jury pursuant to the Federal Rules of Civil Procedure, Rule 38.

## Prayer for Relief

WHEREFORE, Plaintiff Edward Richardson requests that the Court award him the following relief:

(1)     Declare that the Board violated the Privacy and Freedom of Information Acts;

(2)     Award Plaintiff any actual damages under 5 U.S.C. § 552a (g) (5), per violation, the exact amount of which is to be determined at trial;

23

(3)     Award Plaintiff any actual damages under 12 U.S.C. § 1831j(c) (2), per violation, the exact amount of which is to be determined at trial;

(4)     Award Plaintiff any actual damages under 5 U.S.C. § 552, per violation, the exact amount of which is to be determined at trial;

(5)     Invoke its equitable powers to expunge all records or information maintained by the Board that is inaccurate and/or derogatory to Plaintiff;

(6)     Award plaintiff reasonable costs and attorney's fees as provided in 5 U.S.C. § 552a; 5 U.S.C. § 552, and; 12 U.S.C. § 1831j;

(7)     Refer those Board officials responsible, past and current, for criminal prosecution for intentionally violating the Privacy Act under 5 U.S.C. § 552a (i) (1); for intentionally providing false statements under 18 U.S.C. § 1001, and; for intentional perjury under 18 U.S.C. § 1621;

(8)     Expedite this action in every way pursuant to 28 U.S.C. § 1657 (a);

(9)     For punitive damages, and;

(10)    Grant such other relief as the Court may deem just and proper.


Date:     May 9, 2016                    Respectfully submitted,

                                         /s/  _____
                                         Edward Richardson, Plaintiff

                                         393 Malvern Lakes Circle
                                         Apt. 101
                                         Fredericksburg, Virginia 22406
                                         P. 540/207-1666
                                         E. edwardrichardson27@yahoo.com