## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **EDWARD RICHARDSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No.  16-867 (RMC)** |
| | ) | |
| **BOARD OF GOVERNNORS OF THE** | ) | |
| **FEDERAL RESERVE SYSTEM,** *et al,* | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## OPINION

Edward Richardson worked as a law enforcement officer for the Board of Governors of the Federal Reserve System (the Board) in the Law Enforcement Unit (LEU) §from June 8, 2009, until his termination on June 7, 2010.  This is the third in a series of actions Mr. Richardson has brought *pro se* against the Board or its employees, alleging actions that he believes led to his wrongful termination or have prevented him from future employment.

## I.  BACKGROUND

### A.  Factual Background

Mr. Richardson sues both the Board and the United States under the Privacy Act of 1974, 5 U.S.C. § 552a *et seq*.; the Freedom of Information Act, 5 U.S.C. § 552 *et seq*.; the Notification and Federal Employee Antidiscrimination and Retaliation Act of 2002 (No FEAR Act), 5 U.S.C. § 2301 *et seq*.; the whistleblower provision of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA), 12 U.S.C. § 1831j; the Administrative Procedure Act, 5 U.S.C. § 701 *et seq*.; and the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq*.; in addition to a claim that his Fifth Amendment right to due process was violated.

In October 2014, Mr. Richardson filed suit against the Board and seven of the

Board's employees for a variety of claims but only claims under the Rehabilitation Act of 1973,

29 U.S.C. § 791, survived a motion to dismiss and are now pending before the Court.

*Richardson v. Yellen*, 167 F. Supp. 3d 105, 118 (2016) (*Richardson I*).   In April 2016, Mr.

Richardson brought a suit against the same seven employees, which is currently pending before

the Court.  *Richardson v. Sauls, et al*., No. 16-794 (D.D.C., filed April 28, 2016) (*Richardson II*).

On May 6, 2016, Mr. Richardson filed the current matter against the Board.  *See* Complaint [Dkt.

1].  He subsequently amended the instant complaint to add several claims under the FTCA

against the United States.  *See* First Amended Complaint [Dkt. 17]; Second Amended Complaint

[Dkt. 20].

The facts alleged in this case have already been recited in detail in this Court's

opinion in *Richardson I*.  167 F. Supp. 3d at 108.  Only the most pertinent facts need be

reiterated here.  Prior to his employment with the Board, Mr. Richardson was a military police

officer in the United States Army.  While deployed to Iraq in 2003, Mr. Richardson was

subjected to fumes and toxins that apparently led to severe asthma and allergies.  Before he was

hired by the Board, Mr. Richardson informed them of this medical condition.  Mr. Richardson

began working for the Board on June 8, 2009.  In approximately October 2009 and again in

November 2009, Mr. Richardson requested a reasonable accommodation for his medical

condition.  Neither of these requests was acknowledged or addressed by the Board.  Mr.

Richardson was terminated by the Board on July 7, 2010.

Mr. Richardson alleges that Board employees conspired to remove 22 medical

documents supporting instances when he had been absent from work for medical reasons

("calloffs") from his personnel file.  Second Am. Compl. ¶¶ 26, 127.  Mr. Richardson was

informed that his termination was based on the lack of support for his absences.  *Id.* ¶ 20.

Following his termination, in 2010 and 2011, Mr. Richardson alleges that Board

employees Billy Sauls and Albert Pleasant illegally obtained his cellphone records without his

knowledge and then released those cellphone records to other Board personnel in violation of the

Privacy Act.  *Id.* ¶¶ 60-62.

On October 16, 2014, Mr. Richardson initiated a complaint with the Attorney

Grievance Commission of Maryland (Maryland Commission) against Kevin May, one of the

Board members he alleges conspired to remove medical documents from his personnel file.  On

January 11, 2015, Mr. May sent certain documents from Mr. Richardson's personnel file to the

Attorney Grievance Commission of Maryland in response to that complaint.  Mr. Richardson

alleges that this disclosure violated the Privacy Act.  *Id.* ¶ 65, Ex. D.  Mr. Richardson also

alleges that Lieutenant James McCoy sent a mass email to the Board Management Division

containing Mr. Richardson's medical documents.  *Id.* ¶ 76.  Mr. Richardson complained about

this disclosure to several Board employees but no further action was taken.  *Id.* ¶ 77.

LEU Deputy Chief Marvin Jones authored a Notice of Suspension Without Pay

dated May 20, 2010 directed to Mr. Richardson.  Mr. Richardson alleges the Notice was falsified

and that he was never suspended or received the Notice.  *Id.* ¶ 78.  In *Richardson I*, Defendants

admitted that Mr. Richardson never received the Notice, explaining that it was "because his

provisional Board employment was terminated."  *Richardson I*, No. 14-cv-1673, Answer [Dkt.

28] ¶ 59.  Nonetheless, the Notice was placed in Mr. Richardson's personnel file and in the

Report of Investigation (ROI) from the Equal Employment Opportunity Commission's investigation.[1]

Mr. Richardson has remained unemployed since his termination from the Board. He attributes his unemployment to the Board's continued actions against him and in particular, alleged tampering with his personnel file.  He bases this accusation on information from the D.C. Department of Corrections to the effect that he was ineligible for employment due to records in his personnel file, which records he alleges were falsified.  As a result, Mr. Richardson claims to have experienced post-traumatic stress disorder.

### B.  The Amended Complaint

Mr. Richardson filed his initial complaint in this matter on May 9, 2016 naming only the Board as a Defendant.  At that time, the complaint included six claims under the Privacy Act, FOIA, 12 U.S.C. § 1831j, and the No FEAR Act, which requires agencies to notify and train all employees about their rights and remedies under federal anti-discrimination and whistleblower laws.  Compl. [Dkt. 1]; *see* 5 C.F.R. § 724.202(a).  On July 22, 2016, Mr. Richardson filed an Amended Complaint, adding three claims against the United States for alleged violations of the Federal Tort Claims Act.  Am. Compl. [Dkt. 17].  The Court's order granting Mr. Richardson leave to file an amended complaint stated that Mr. Richardson was to file no later than August 5, 2016.  Mr. Richardson mistook this instruction to mean that he could amend and refile a further amended complaint any time before August 5, 2016, which he did on

---

[1] Mr. Richardson challenged his termination before the Equal Employment Opportunity Commission but subsequently asked for a "right to sue" in a letter indicating that he could not appear before an EEOC Administrative Judge for fear of physical injury.  The Administrative Judge construed Mr. Richardson's letter as a withdrawal of his request for a hearing and dismissed the case in an order dated September 15, 2016.  The Report of Investigation was attached to the Administrative Judge's order dismissing the case.  *Richardson I*, No. 14-cv-1673, First Amended Complaint [Dkt. 8] at 56.

August 4, 2016.  *See* Motion for Leave to File Second Amended Complaint [Dkt. 21]; Second Am. Comp. [Dkt. 20].  The Second Amended Complaint included two additional claims against the Board and is the operative Complaint.  Counts One to Eight name the Board as Defendant and Counts Nine to Eleven name the United States.

Count One of the Second Amended Complaint alleges a violation of the Privacy Act and FOIA for the removal of twenty-two medical documents from Mr. Richardson's personnel file.

Counts Two, Three, and Six allege violations of the Privacy Act, FOIA, and 12 U.S.C. § 1831j for the release of information from Mr. Richardson's personnel file to the Maryland Commission (Count Two); the release of Mr. Richardson's medical documents in a mass email to Board personnel (Count Three); and the alleged illegal search and seizure of Mr. Richardson's cellphone and dissemination of his cellphone records (Count Six).

Count Four alleges violations of the Privacy Act and 12 U.S.C. § 1831j for the placement of a falsified suspension notice in Mr. Richardson's personnel file.

Counts Five and Seven allege violations of 12 U.S.C. § 1831j for retaliation against Mr. Richardson for his disclosure that there were medical documents missing from his personnel file (Count Five); and the denial of his termination appeal (Count Seven).

Count Eight alleges a violation of the Administrative Procedure Act for failure to comply with the statutorily mandated requirements of the Privacy Act, FOIA, No FEAR Act, and 12 U.S.C. § 1831j.

Counts Nine through Eleven are claims against the United States under the Federal Tort Claims Act for wrongful termination (Count Nine); obtaining cellphone records (Count Ten); and intentional infliction of emotional distress (Count Eleven).

Finally, Mr. Richardson claims that his due process rights under the Fifth

Amendment of the Constitution have been violated.  Mr. Richardson's termination appeal was

denied by the Board Ombudsman who determined that Mr. Richardson was terminated for too

many tardy arrivals, not for absences.  Mr. Richardson claims that by giving him misinformation

regarding the basis of his termination, the Board violated his due process rights because it

prevented him from adequately challenging his discharge.

## II.  LEGAL STANDARDS

### A.  Motion to Dismiss Under Rule 12(b)(1)

Under Federal Rule of Civil Procedure 12(b)(1), a defendant may move to dismiss

a complaint, or any portion thereof, for lack of subject matter jurisdiction.  Fed. R. Civ. P.

12(b)(1).  No action of the parties can confer subject matter jurisdiction on a federal court

because subject matter jurisdiction is both a statutory requirement and an Article III requirement.

*Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003).  The party claiming

subject matter jurisdiction bears the burden of demonstrating that such jurisdiction exists.  *Khadr*

*v. United States*, 529 F.3d 1112, 1115 (D.C. Cir. 2008); *see Kokkonen v. Guardian Life Ins. Co.*

*of Am.*, 511 U.S. 375, 377 (1994) (noting that federal courts are courts of limited jurisdiction and

"[i]t is to be presumed that a cause lies outside this limited jurisdiction, and the burden of

establishing the contrary rests upon the party asserting jurisdiction" (internal citations omitted)).

When reviewing a motion to dismiss for lack of jurisdiction under Rule 12(b)(1),

a court must review the complaint liberally, granting the plaintiff the benefit of all inferences that

can be derived from the facts alleged.  *Barr v. Clinton*, 370 F.3d 1196, 1199 (D.C. Cir. 2004).

Nevertheless, "the court need not accept factual inferences drawn by plaintiffs if those inferences

are not supported by facts alleged in the complaint, nor must the Court accept plaintiff's legal

conclusions." *Speelman v. United States*, 461 F. Supp. 2d 71, 73 (D.D.C. 2006). A court may consider materials outside the pleadings to determine its jurisdiction. *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1107 (D.C. Cir. 2005); *Coal. for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003). A court has "broad discretion to consider relevant and competent evidence" to resolve factual issues raised by a Rule 12(b)(1) motion. *Finca Santa Elena, Inc. v. U.S. Army Corps of Engineers*, 873 F. Supp. 2d 363, 368 (D.D.C. 2012) (citing 5B Charles Wright & Arthur Miller, Fed. Prac. & Pro., Civil § 1350 (3d ed. 2004)); *see also Macharia v. United States*, 238 F. Supp. 2d 13, 20 (D.D.C. 2002) (in reviewing a factual challenge to the truthfulness of the allegations in a complaint, a court may examine testimony and affidavits), *aff'd*, 334 F.3d 61 (2003). In these circumstances, consideration of documents outside the pleadings does not convert the motion to dismiss into one for summary judgment. *Al-Owhali v. Ashcroft*, 279 F. Supp. 2d 13, 21 (D.D.C. 2003).

### B. Motion to Dismiss Under Rule 12(b)(6)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the adequacy of a complaint on its face. Fed. R. Civ. P. 12(b)(6). To survive the motion, a complaint must contain sufficient factual information, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A court must assume the truth of all well-pleaded factual allegations and construe reasonable inferences from those allegations in favor of the plaintiff. *Sissel v. Dep't of Health & Human Servs.*, 760 F.3d 1, 4 (D.C. Cir. 2014). A court need not accept inferences drawn by a plaintiff if such inferences are not supported by the facts set out in the complaint. *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). Further, a court does not need to accept as true legal conclusions set forth in a complaint. *Iqbal*,

556 U.S. at 678.  In deciding a motion under Rule 12(b)(6), a court may consider the facts

alleged in the complaint, documents attached to the complaint as exhibits or incorporated by

reference, and matters about which the court may take judicial notice.  *Abhe & Svoboda, Inc. v.*

*Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007).

### III.  ANALYSIS

#### A.  The FTCA Claims

Mr. Richardson brings three claims under the FTCA alleging wrongful

termination, invasion of privacy, and intentional infliction of emotional distress.  His claims must

fail for failure to exhaust administrative remedies.  "The FTCA bars claimants from bringing suit

in federal court until they have exhausted their administrative remedies."  *McNeil v. United*

*States*, 508 U.S. 106, 113 (1993).  On March 16, 2016, Mr. Richardson submitted an

administrative tort claim with the Board which was denied on June 26, 2016.  *See* First Am.

Compl. ¶ 13.  However, he filed this action on May 9, 2016, before a resolution from the Board

on his tort claims.

Mr. Richardson argues that he did properly exhaust his administrative remedies

because he amended his complaint, adding the United States as a defendant and including the

FTCA claims, on June 22, 2016, *after* the Board had made a final decision.  Opp'n [Dkt. 24] at

4-5.  A timing defect in the exhaustion of administrative remedies "cannot be cured by

amendment of the complaint at a later date."  *Johnson v. Allen*, No. 04-0316 (GK), 2005 WL

607911, at *2 (D.D.C. Mar. 14, 2005).  The fact that Mr. Richardson's original complaint did not

explicitly state any reliance on the FTCA is not sufficient.  Rather, the relevant inquiry is

whether the original pleading "advanced claims against the United States for money damages for

injury 'caused by the negligent or wrongful act or omission of any employee of the Government

while acting within the scope of his office or employment.'" *Schneider v. Kissinger*, 310 F. Supp. 2d 251, 269 (D.D.C. 2004) (quoting 28 U.S.C. § 2675(a)), *aff'd*, 412 F.3d 190 (D.C. Cir. 2005).

Mr. Richardson's initial complaint in this case sued the Board, a federal agency, for actions of its employees, acting within the scope of their employment[2] and seeking money damages.  Compl. ¶¶ 14, 167.  The factual underpinnings of Mr. Richardson's FTCA claims are based on the same set of facts underlying the claims made against the Board in his initial complaint.  In that complaint, Mr. Richardson alleged that his medical documents were removed from his personnel file and wrongfully disclosed and that the Board retaliated against him when he complained.  Compl. ¶¶ 106-12.  In the Second Amended Complaint, Mr. Richardson alleges wrongful termination because, *inter alia*, he was dismissed for the failure to provide supporting medication documentation to substantiate his absences; these are the same documents he alleges were improperly removed from his personnel file.  Second Am. Compl. ¶¶ 170-71.  Similarly, Mr. Richardson initially alleged that his cellphone records were wrongfully searched.  Compl. ¶ 153.  The Second Amended Complaint includes an FTCA claim for invasion of privacy when the Board obtained his cellphone records.  Second Am. Compl. ¶¶ 184-85.  The third FTCA claim in the Second Amended Complaint is for intentional inflection of emotional distress arising from the cumulative effect of all the Board's alleged actions against Mr. Richardson.  *Id.* ¶¶ 192-95.

---

[2] In this action, Mr. Richardson sues only the Board, not individual defendants, and Defendants acknowledge that the employees were acting within the scope of their employment.  Joint Mot. to Dismiss [Dkt. 22] at 21.  The Court also notes that in *Richardson I*, the Attorney General filed a certification substituting the United States for the individual defendants because they were acting within the scope of their employment.  *Richardson I*, 167 F. Supp. 3d at 114.  Mr. Richardson did not contest the certification and, in fact, expressed relief at not having to establish that the individual defendants were acting within the scope of their employment.  *Id.* at 114 n.8.

Thus, the initial complaint in this case constituted a claim against the United States for money damages based on alleged actions by government employees and it was necessary for Mr. Richardson to complete the FTCA administrative process before filing such claims if he wanted to rely on that statute.[3]  Mr. Richardson's three FTCA claims in the Second Amended Complaint must be dismissed because he failed to exhaust his administrative remedies, as a result of which the Court has no jurisdiction.  Contrary to Mr. Richardson's argument, "'[a]llowing claimants generally to bring suit under the FTCA before exhausting their administrative remedies to cure the jurisdictional defect by filing an amended complaint would render the exhaustion requirement meaningless and impose and unnecessary burden on the judicial system.'"  *Schneider v. Kissinger*, 310 F. Supp. 2d at 269 (quoting *Duplan v. Harper*, 188 F.3d 1195, 1199 (10th Cir. 1999)).

## B.   The Doctrine of *Res Judicata*

Defendants argue that Mr. Richardson's remaining claims should all fail under the doctrine of *res judicata*, or claim preclusion, because *Richardson I* "(1) involve[d] the same claims or cause of action, (2) between the same parties or their privies, and (3) there has been a final, valid judgment on the merits, (4) by a court of competent jurisdiction."  *Smalls v. United States*, 471 F.3d 186, 192 (D.C. Cir. 2006).  A claim is considered the same as a prior claim for purposes of *res judicata* if it is "'based on the same nucleus of facts, for it is the facts surrounding the transaction or occurrence which operate to constitute the cause of action, not the legal theory upon which a litigant relies.'"  *Sczygelski v. U.S. Customs & Border Patrol Agency*,

---

[3] While pleadings prepared by *pro se* litigants are generally liberally construed, the Supreme Court has made clear that it has "never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes be those who proceed without counsel."  *McNeil*, 508 U.S. at 113.

48 F. Supp. 3d 80, 85 (D.D.C. 2014) (quoting *Page v. United States*, 729 F.2d 818, 820 (D.C. Cir. 1984)), *aff'd sub nom. Sczygelski v. U.S. Customs & Border Prot.*, 624 F. App'x 1 (D.C. Cir. 2015).

In determining whether there has been a final, valid judgment on the merits, the D.C. Circuit has made clear that "dismissals for lack of jurisdiction are not decisions on the merits and therefore have no *res judicata* effect." *Kasap v. Folger National Fleming & Douglas, Inc.*, 166 F.3d 1243, 1248 (D.C. Cir. 1999). According to Rule 41(b), an involuntary dismissal operates as an adjudication on the merits "except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19." Fed. R. Civ. Pr. 41(b). A "ruling is a judgment on the merits if it is based on legal rights as distinguished from mere matters of practice, procedure, jurisdiction, or form." *Polsby v. Thompson*, 201 F. Supp. 2d 45, 48-49 (D.D.C. 2002) (citations omitted). Thus a dismissal based on "statute of limitations is not *res judicata*." *Havens v. Mabus*, 759 F.3d 91, 98 (D.C. Cir. 2014).

Count Four alleges that LEU Deputy Chief Jones falsely created a "Notice of Suspension Without Pay" stating that "Plaintiff was suspended from his law enforcement duties due to an alleged breach of security" and that the Notice was included in his personnel file and in the ROI in violation of the Privacy Act and the whistleblower protections of 12 U.S.C. 1831j. Second Am. Compl. ¶ 155. Mr. Richardson claims that he only became aware of the Notice when he saw it in the ROI and argues that the Notice was falsified because he was never actually suspended. *Id*. ¶ 156; Ex. B. In *Richardson I*, Mr. Richardson alleged identical facts. *See Richardson I*, Am. Compl. [Dkt. 8] ¶¶ 119-23. This Court dismissed the claim in that case. *Richardson I*, 167 F. Supp. 3d at 118. The fact that Mr. Richardson now alleges a Privacy Act violation based on the same facts does not resuscitate it. He makes the same claim, against the

same parties, and there had been a final judgment on the merits by a competent court.  All the elements of *res judicata* are met with respect to Count Four and it will accordingly be dismissed.

However, Mr. Richardson's remaining claims that are based on the same facts as those in *Richardson I* were dismissed for jurisdictional reasons.  The *Richardson I* opinion thus does not constitute a final judgment on the merits for purposes of *res judicata*.[4]  Nevertheless, all his remaining claims, with the exception of Counts Two and Six, will be dismissed for the reasons below.

### C.  The Privacy Act Claims

#### 1.  Count One:  Removal of Medical Documents

On June 7, 2010, Mr. Richardson was terminated from the Board because "he had not provided supporting medical documents for his disability related calloffs."  Second Am. Compl. ¶ 39.  Prior to his termination, on May 12, 2010, Mr. Richardson "was summoned to a meeting with Sauls who informed [him] that he had 15 calloffs without supporting medical documentation." *Id*. ¶ 35.  Mr. Richardson claims that through discovery in June 2014, he discovered that an additional 7 medical documents were removed from his file, for a total of 22 missing documents. *Id*. ¶ 10.  Count One alleges that the removal of these 22 medical documents from Mr. Richardson's personnel file was improper and led to his termination.

The Privacy Act "provides a two-year limitations period that commences when the plaintiff knows or should have known of the alleged violation."  *Agelli v. Burwell*, 64 F.

---

[4] Mr. Richardson's constitutional tort claims and Privacy Act claims were dismissed on statute of limitations grounds. *Richardson I*, 167 F. Supp. 3d at 114.  The Court noted that even if Mr. Richardson had pled a violation of whistleblower protections under 12 U.S.C. § 1831j, his claim would fail because it was untimely. *Id*. at 116.  In *Richardson I*, Mr. Richardson relied on the American with Disabilities Act, 42 U.S.C.  12101 *et seq*., to state a claim, but it was dismissed because the ADA excludes federal government from coverage. *Id*. at 117.

Supp. 3d 69, 71 (D.D.C. 2016); *see* 5 U.S.C. § 552a(g)(5).  Mr. Richardson argues that his

Privacy Act claims should be tolled because of his discovery, in June 2014, of additional missing

medical documents.  Under § 552a(g)(5), if an agency "materially and willfully misrepresented

any information . . . the action may be brought at any time within two years after discovery by

the individual of the misrepresentation."  5 U.S.C. § 552a(g)(5).  "In order for equitable tolling to

apply, the facts must show that 'despite all due diligence, plaintiff was unable to obtain vital

information bearing on the *existence* of his claim.'"  *Samtmann v. DOJ*, 35 F. Supp. 3d 82, 90

(D.D.C. 2014) (quoting *Ciralsky v. CIA*, 689 F. Supp. 2d 141, 153 (D.D.C. 2010)).  The relevant

inquiry "is when plaintiff had or should have had knowledge of a document's existence or

disclosure, not when he obtained definitive proof."  *Id.*

   Mr. Richardson has alleged no willful misrepresentation of information by the

Board and thus tolling the two-year statute of limitations in unavailable.  Furthermore, Mr.

Richardson clearly had knowledge of the alleged removal of medical documents as early as May

12, 2010 when he met with Mr. Sauls.  The fact that he later learned of additional documents

does not change his prior knowledge of the *existence* of a claim under the Privacy Act.  His

cause of action therefore accrued in 2010, approximately 6 years before he filed the current

action on May 9, 2016.  Count One must therefore fail as a matter of law.

### 2.  Count Two:  Disclosure of Confidential Documents

   On October 16, 2014, Mr. Richardson filed a complaint with the Maryland

Commission naming Kevin May.  *See* Second Am. Compl, Ex. D.  Mr. May responded to the

allegations in a letter dated January 11, 2015, to which he attached several documents, only three

of which related to Mr. Richardson:  (1) a Separation Notice Letter to Mr. Richardson, (2) a

Separation Appeal Letter to Mr. Richardson, and (3) an affidavit generated as part of Mr.

Richardson's administrative EEO complaint.[5]  *Id.*  Count Two alleges that this dissemination of

confidential documents to the Maryland Commission constituted a Privacy Act violation.

Second Am. Compl. ¶¶ 65, 128, 135.

The Privacy Act creates a "routine use" exception "which allows agencies to . . .

disclose records without consent."  *Lugo v. DOJ*, No. 15-cv-879 (RDM), 2016 WL 5929950, at

*5 (D.D.C. Sept. 30, 2016).  Mr. Richardson argues that the "routine use" exception does not

apply because Mr. May used the records "for personal reasons."  Opp'n at 10; Second Am.

Compl. ¶ 72.  Defendants respond that Mr. May "was acting in his capacity as a Board employee

relations specialist during the events giving rise to plaintiff's claims" and note that *Richardson I*

found the United States had certified that Mr. May was acting within the scope of his

employment.  Joint Mot. to Dismiss at 21.

In order to invoke the "routine use" exception, an agency must show:  "(1) that

notice of the asserted 'routine use' has been published in the Federal Register"; and "(2) that the

agency disclosed the record 'for a purpose which is compatible with the purpose for which [that

record] was collected."  *Id.*; 5 U.S.C. § 552a(a)(7).  Defendants point to a routine use published

in the Federal Register applicable to the disclosure in this case:

> Disclosure for Enforcement, Statutory and Regulatory Purposes.
> Information may be disclosed to the appropriate federal, state, local,
> foreign, or self-regulatory organization or agency responsible for
> investigating, prosecuting, enforcing, implementing, issuing, or
> carrying out a statute, rule, regulation, order, policy, or license if the
> information may be relevant to a potential violation of civil or
> criminal law, rule, regulation, order, policy or license.

---

[5] Mr. Richardson's complaint does not make clear whose affidavit was produced.  However,
based on the record in *Richardson I*, this Court found that the disclosed affidavit was Mr. May's
EEO investigative affidavit.  *Richardson I*, 167 F. Supp. 3d at 108.

73 C.F.R. 24984-02 (May 6, 2008).  The Maryland Commission falls under this definition as a body appointed to investigate and prosecute allegations of professional misconduct by Maryland attorneys and therefore satisfies the first prong of the "routine use" test.

However, Defendants fail to explain how Mr. Richardson's confidential files were disclosed for a purpose compatible with the purpose for which those files were collected.  While the D.C. Circuit has yet to decide "the precise limitations created by section 552(a)(7)'s compatibility requirement in the non-labor context," *U.S. Postal Service v. National Ass'n of Letter Carriers, AFL-CIO*, 9 F.3d 138, 146 (D.C. Cir. 1993), it is clear from the language of the statute that to constitute "routine use," the disclosure of a record must be "for a purpose which is compatible with the purpose for which it was collected."  5 U.S.C. § 552a(7).  Defendants have not provided sufficient detail to establish that the disclosure to the Maryland Commission satisfies the test for "routine use" and other courts in this district have required a fairly close relationship between the purpose for which a document was created and the purpose of its disclosure.  *See Townsend v. United States*, No. 14-cv-1644 (BAH), 2017 WL 727536, at *24 (D.D.C. Feb. 21, 2017) ("purpose of gathering the information was nearly identical to the purpose of its disclosure:  to gather and evaluate information regarding time-and-attendance fraud at the EPA"); *Ames v. Dep't of Homeland Sec.*, 153 F. Supp. 3d 342, 348 (D.D.C. 2016) (finding routine use where agency's purpose in gathering information was to inquire into misconduct of an employee and purpose of disclosure was to prevent misconduct by employee at another agency); *Reed v. Dep't of the Navy*, 910 F. Supp. 2d 32, 41-45 (D.D.C. 2012) (finding routine use where agency investigation into alleged misconduct was shared with employee's second employer).  Without sufficient information to decide whether the incident constituted

"routine use," Mr. Richardson's claim will not be dismissed.  Defendants' motion to dismiss Count Two will be denied without prejudice.

### 3.   Count Three:  Disclosure of Documents in Mass Email

In Count Three, Mr. Richardson alleges that his confidential documents were disclosed in violation of the Privacy Act through a mass email sent by Board officer James McCoy in retaliation for Plaintiff's complaints regarding the missing medical documents. Second Am. Compl. ¶ 147.  Mr. Richardson reported the mass disclosure on May 14, 2010.  *Id.* ¶ 77.  Mr. Richardson's claim thus accrued at least by May 14, 2010, five years before he filed the present action.  Count Three will be dismissed because it is untimely.

### 4.   Count Six:  Search of and Dissemination of Cellphone Records

Count Six alleges that, in 2010 and 2011, Albert Pleasant and Billy Sauls obtained Mr. Richardson's cellphone records, searched those records, and disseminated them to non-law enforcement personnel of the Board in violation of the Privacy Act.  Second Am. Compl ¶ 174. Mr. Richardson claims that he only discovered this violation in July 2014.  *Id.* ¶ 58.  As explained above, claims may only be tolled if an agency "materially and willfully misrepresented any information."  5 U.S.C. § 552a(g)(5).  Mr. Richardson states that Messrs. Pleasant and Sauls "secretly obtained his cellular records" and that they were disseminated "without his knowledge," suggesting that there was willful misrepresentation of information.  Second Am. Compl. ¶ 174.  Without more information regarding the Board's actions and Mr. Richardson's knowledge of these events, the claim will not be dismissed.  Defendants' motion to dismiss Count Six will be denied without prejudice.

### D. Whistleblower Protection Claims under 12 U.S.C. § 1831j

The Second Amended Complaint alleges "Whistleblower Retaliation Under 12 U.S.C. § 1831j" and Counts Two through Seven make reference to 12 U.S.C. 1831j. Second Am. Compl. ¶ 95. Defendants construe this as a whistleblower claim under FIRREA. Joint Mot. to Dismiss [Dkt. 22] at 2. Mr. Richardson insists that he "has made no whistleblower claim under FIRREA" but meant instead to rely on the No FEAR Act. Opp'n [Dkt. 24] at 11 ("More importantly, the Board directly violates the No FEAR Act by not notifying current and former federal Board employees of their whistleblower protections under 12 U.S.C. § 1831j."). The Court will accordingly construe Mr. Richardson's "whistleblower" claim as forming part of his allegation under the No FEAR Act that the Board failed to notify current and former employees of their whistleblower protections.

To be clear, had Mr. Richardson made a whistleblower claim, it would be barred by FIRREA. *See* 12 U.S.C. 1831j(b) (providing that an "employee or former employee who believes he has been discharged or discriminated against . . . may file a civil action in the appropriate United States district court before the close of the 2-year period beginning on the date of such discharge or discrimination"). *Richardson I* found that the "latest possible date of retaliation by the Board would be June 7, 2010, when it terminated Mr. Richardson." *Richardson I*, 167 F. Supp. 3d at 117. This case was brought on May 9, 2016, six years after Mr. Richardson's termination. To the extent that Mr. Richardson intended any whistleblower claims, they will be dismissed.

### E. FOIA Claims

Counts One, Two, Three, and Six allege violations of FOIA. Mr. Richardson argues that his "personal privacy interests are protected by two provisions of FOIA, exemptions

6 and 7(C)."  Opp'n at 11.  Mr. Richardson misunderstands the application of FOIA.  FOIA

requires federal agencies to release government records to the public upon request, subject to

nine listed exemptions.  *See* 5 U.S.C. § 552(b); *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007).

FOIA mandates broad disclosure of government records to the public; it does not protect an

individual's privacy interests.  Mr. Richardson filed no FOIA request and his claims are not

cognizable under FOIA.  All claims under FOIA must accordingly be dismissed.

### F.  APA Claim

In Count Eight, Mr. Richardson seeks judicial review under the APA of the

Board's failure to comply with statutorily mandated requirements of the Privacy Act, FOIA, and

the No FEAR Act.  Mr. Richardson asserts that the Board violated the No FEAR Act "by

intentionally concealing from its website, and elsewhere, which whistleblower protections cover

current and former employees of the Board."  Second Am. Compl. ¶ 96.

As a starting point, Mr. Richardson cannot bring an APA claim premised on

either the Privacy Act or FOIA.   The APA provides review of final agency action only where

"there is no other adequate remedy in a court."  5 U.S.C. § 704.  An adequate remedy exists for

review of claims under the Privacy Act, *Wilson v. McHugh*, 842 F. Supp. 2d 310, 320 (D.D.C.

2012) (plaintiff cannot bring an independent APA claim predicated on a Privacy Act violation),

and under FOIA, *Kenney v. Dep't of Justice*, 603 F. Supp. 2d 184, 190 (D.D.C. 2009) (claims

reviewable under FOIA itself).

The crux of Mr. Richardson's APA claim appears to be premised entirely on the

Board's alleged failure to comply with the No FEAR Act by failing to notify employees of their

rights under that law.  The regulations under the No FEAR Act require each agency to "provide

notice to all of its employees, former employees, and applicants for Federal employment about

the rights and remedies available under the Antidiscrimination Laws and Whistleblower Protection Laws applicable to them." 5 C.F.R. § 724.202(a).  The regulations provide model paragraphs, which constitute "the minimum text to be included in the notice." *Id*. § 724.202(g). The model paragraphs discuss whistleblower protection laws but make no specific reference to § 1831j.  Mr. Richardson attaches to his Second Amended Complaint printouts of the Board's website containing text seemingly identical to that in the regulation's model paragraphs.  Mr. Richardson has thus failed to state a claim upon which relief may be granted.[6]

### G.  Constitutional Claims

The Second Amended Complaint also alleges a violation of Mr. Richardson's "due process [rights] under the Fifth Amendment" arising from the denial of his appeal of his termination.[7]  Second Am. Compl. ¶ 113.  He states that the Ombudsman denied his appeal "citing that Plaintiff had not been terminated for calloffs . . . but for tardies." *Id*. ¶ 109.  Mr. Richardson argues that by providing him a false reason for his termination, the Board prevented him from being able to appeal effectively.  Opp'n at 13.  Mr. Richardson's constitutional claim must fail because a plaintiff cannot sue the Federal Government absent a waiver of sovereign immunity. *Epps v. U.S. Atty. Gen.*, 575 F. Supp. 232, 238 (D.D.C. 2008).  While the FTCA waives sovereign immunity for some claims, it "does not waive sovereign immunity for constitutional torts." *Id*.  Mr. Richardson's Fifth Amendment claim will be dismissed.

---

[6] The Court does not belabor whether the No FEAR Act allows individual lawsuits or whether the APA applies in light of its finding that no violation has been shown.

[7] Mr. Richardson referred to the Fourth Amendment in Second Amended Complaint but abandons any Fourth Amendment claim in his opposition to Defendants' motion to dismiss. Opp'n at 13 ("Plaintiff asserted no claims under the Fourth Amendment in this cause of action.").

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Defendant's Motion to Dismiss [Dkt. 22] in part and deny in part.  The motion will be denied as to Counts Two and Six and granted on all remaining counts.  A memorializing order accompanies this opinion.


Date: March 31, 2017

_____/s/_____
ROSEMARY M. COLLYER
United States District Judge