UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| EDWARD RICHARDSON, | ) )  ) |
| Plaintiff, | ) ) |
| v. | ) ) Civil Action No. 16-867 (RMC) |
| BOARD OF GOVERNNORS OF THE FEDERAL RESERVE SYSTEM, *et al*, | ) ) ) ) |
| Defendants. | ) ) ) |

**MEMORANDUM OPINION**

Edward Richardson worked as a law enforcement officer for the Board of Governors of the Federal Reserve System (the Board) for approximately one year before he was terminated on June 7, 2010. This is the third in a series of lawsuits Mr. Richardson has brought *pro se* against the Board or its employees, alleging actions that he believes led to his wrongful termination or have prevented him from securing future employment. After the Board moved to dismiss Mr. Richardson's claims in this action, the Court granted the motion in part and dismissed several of Mr. Richardson's claims, but denied the motion as to two claims brought under the Privacy Act. The Board has now moved the Court to reconsider the motion to dismiss as to those two remaining claims. Because the Court finds, upon reconsideration, that Mr. Richardson failed to establish pecuniary damages as required to bring a Privacy Act claim, the Board's motion will be granted and the remaining claims will be dismissed.

**I. BACKGROUND**

The facts alleged in this case have already been recited in detail, *see Richardson v. Yellen*, 167 F. Supp. 3d 105, 108 (D.D.C. 2016) (*Richardson I*), and only those facts that are

1

pertinent to Mr. Richardson's remaining claims need be reiterated here. Prior to his employment with the Board, Mr. Richardson was a military police officer in the United States Army. While deployed in Iraq in 2003, Mr. Richardson was subjected to fumes and toxins that apparently led to severe asthma and allergies. Mr. Richardson informed the Board of this medical condition before he was hired. Mr. Richardson began working for the Board's Law Enforcement Unit (LEU) on June 8, 2009. In approximately October 2009 and again in November 2009, Mr. Richardson requested accommodations for his medical condition. Neither of these requests was acknowledged or addressed by the Board.

The Board terminated Mr. Richardson's employment on July 7, 2010; he was informed that his termination was based on a lack of support for his absences. *See* Second Am. Compl. ¶ 20 [Dkt. 20] (SAC). Mr. Richardson has alleged that Board employees conspired to remove 22 medical documents supporting instances when he had been absent from work for medical reasons ("calloffs") from his personnel file. *See id.* ¶¶ 26, 127. These claims have since been dismissed by the Court. *See* 3/31/2017 Order [Dkt. 27]; *Richardson v. Bd. of Governors of the Fed. Reserve Sys.*, 248 F. Supp. 3d 91 (D.D.C. 2017) (*Richardson III*).

Mr. Richardson alleges that, following his termination, Board employees Billy Sauls and Albert Pleasant illegally obtained his cellphone records in 2010 and 2011 without his knowledge and then released those records to other Board personnel in violation of the Privacy Act of 1974, 5 U.S.C. § 552a *et seq*. (the Privacy Act or the Act). *See* SAC ¶¶ 60-62. Mr. Richardson also alleges that Board employee Kevin May conspired to remove medical documents from Mr. Richardson's personnel file. *See id.* ¶ 65. On October 16, 2014, Mr. Richardson initiated a complaint with the Attorney Grievance Commission of Maryland (Maryland Commission) against Mr. May. On January 11, 2015, Mr. May sent certain

documents from Mr. Richardson's personnel file to the Maryland Commission in response to that complaint. *Id*. ¶ 65. Mr. Richardson alleges that this disclosure also violated the Privacy Act. *Id*. ¶¶ 140-41.[1]

Mr. Richardson has remained unemployed since his termination from the Board. He attributes his unemployment to the Board's continued actions against him and in particular, to the alleged tampering with his personnel file. Specifically, Mr. Richardson's personnel file contains a Notice of Suspension Without Pay, dated May 20, 2010, issued by LEU Deputy Chief Marvin Jones. Mr. Richardson alleges that the Notice was falsified and that he was never suspended and did not receive a copy of the Notice. *Id*. ¶ 78. Defendants have acknowledged that Mr. Richardson never received the Notice, explaining that this was "because his provisional Board employment was terminated." *Richardson v. Yellen*, No. 14-cv-1673, Answer [Dkt. 28] ¶ 59. Nonetheless, the Notice was placed in Mr. Richardson's personnel file and in a report from the Equal Employment Opportunity Commission following its investigation.

Mr. Richardson believes that the allegedly falsified Notice in his file led to his being determined ineligible for future employment, specifically by the D.C. Department of Corrections. *See* SAC ¶¶ 78, 81, 84; *see also id.* at ¶ 85 ("[Mr. Richardson] received notification by the D.C. Department of Corrections that he was ineligible for employment due to falsified information in his Board personnel file."). Mr. Richardson made these allegations in Count Four of his Amended Complaint, which has been dismissed. *See* SAC ¶¶ 154-64; 3/31/2017 Order.

On May 9, 2016, Mr. Richardson filed the current matter against the Board, alleging various constitutional claims and federal statutory violations. *See* Compl. [Dkt. 1]. He

---

[1] Mr. Richardson raised a number of other allegations in his complaint, which have been dismissed. *See generally Richardson III*, 248 F. Supp. 3d 91.

3

subsequently amended the instant complaint to add several claims under the Federal Tort Claims Act (FTCA) against the United States. *See* First Am. Compl. [Dkt. 17]; *see also* SAC. After the Board moved to dismiss Mr. Richardson's allegations, the Court dismissed a number of Mr. Richardson's claims in this action. *See* 3/31/2017 Order; *Richardson III*, 248 F. Supp. 3d 91.

The remaining counts allege violations of the Privacy Act, for the release of information from Mr. Richardson's personnel file to the Maryland Commission (Count Two) and the alleged illegal search and seizure of Mr. Richardson's cellphone and dissemination of his cellphone records (Count Six).[2] Mr. Richardson claims under Count Two that he "has suffered adverse and harmful effects" due to Mr. May's alleged mishandling of his personal information, "including, but not limited to, mental distress, emotional trauma, embarrassment, humiliation, and lost or jeopardized present and future financial opportunities." SAC ¶ 144. Similarly, regarding Mr. Richardson's allegations of improper search and dissemination of his cellphone records, Count Six alleges that Mr. Richardson "has suffered adverse and harmful effects, including, but not limited to, mental distress, emotional trauma, embarrassment, humiliation, and lost or jeopardized present and future financial opportunities." *Id.* ¶ 183. Mr. Richardson also complains that, "[a]s a direct result of the defendants' actions [he] has involuntarily remained unemployed since his June 7, 2010 termination." *Id.* ¶ 84.

After the Court declined to dismiss Counts Two and Six, the Board moved for reconsideration. Mot. for Recons. [Dkt. 29] (Mot.). Mr. Richardson opposed. Mem. Opp'n Mot.

---

[2] In his Second Amended Complaint, Mr. Richardson also alleges in Counts Two and Six that the Board violated the Federal Freedom of Information Act (FOIA), 5 U.S.C. § 552, and whistleblower protections under 12 U.S.C. § 1831j. The Court has already held that Mr. Richardson is ineligible for relief under these theories, *see Richardson III*, 248 F. Supp. 3d at 103, and accordingly the only basis for Mr. Richardson's remaining claims is the Privacy Act.

4

for Recons. [Dkt. 32] (Opp'n). The Board replied. Reply Opp'n Mot. for Recons. [Dkt. 33] (Reply). The motion is ripe for review.

## II. LEGAL STANDARD

Generally, a motion for reconsideration is governed by the "law of the case" doctrine: "the same issue presented a second time in the same case in the same court should lead to the same result." *LaShawn A. v. Barry*, 87 F.3d 1389, 1393 (D.C. Cir. 1996). However, interlocutory orders, including a partial granting of a motion to dismiss, "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). Thus, the Court is "free to reconsider" a non-final judgment. *Filebark v. Dep't of Transp.*, 555 F.3d 1009, 1013 (D.C. Cir. 2009). The Court should reconsider interlocutory orders only "as justice requires." *United States v. Slough*, 61 F. Supp. 3d 103, 107 (D.D.C. 2014) (quoting *United States v. Coughlin*, 821 F. Supp. 2d 8, 18 (D.D.C. 2011)). To determine whether "justice requires" reconsideration, "the Court considers whether it 'patently misunderstood a party, has made a decision outside the adversarial issues presented to the Court by the parties, has made an error not of reasoning but of apprehension, or where a controlling or significant change in the law or facts [has occurred] since the submission of the issue to the Court.'" *Slough*, 61 F. Supp. 3d at 108 (quoting *Singh v. George Washington Univ.*, 383 F. Supp. 2d 99, 101 (D.D.C. 2005)).

## III. ANALYSIS

### A. "Actual Damages"

The Board argues that reconsideration is appropriate here because "the Court misapprehended the Board's arguments as reaching only the merits of Plaintiff's Privacy Act claims, when in fact the Board also argued that no relief was available to Plaintiff under the

Act." Mot. at 4. The Board argues that no relief is available to Mr. Richardson under the Privacy Act because he fails to plead "actual, pecuniary damages," and has failed to state a claim for which relief can be granted under the Act. *Id.* at 5.

In denying Defendants' Motion to Dismiss as to Counts Two and Six, the Court determined that there was insufficient information to dismiss the claims on the merits. As to Count Two, the Court found that Defendants had failed to provide sufficient information for the Court to find that the Privacy Act's "routine use" exception applied to Kevin May's dissemination to the Maryland Commission of three documents related to Mr. Richardson. *See Richardson III*, 248 F. Supp. 3d at 101-02. The Court found that the Board had not explained "how Mr. Richardson's confidential files were disclosed for a purpose compatible with the purpose for which those files were collected," as required to trigger the "routine use" exception under the Privacy Act. *Id.* at 102; *see also* 5 U.S.C. § 552a(a)(7). Thus, the Court found that the Board had not provided sufficient information to decide, on the merits, whether the incident constituted a routine use and was therefore permissible under the Act. As to Count Six, the Court also determined that there was insufficient information to dismiss the claim. Specifically, the Court was unable to reach the question of whether Count Six was time-barred because it did not have sufficient information to determine whether, as Mr. Richardson claimed, the Board had willfully misrepresented information related to an allegedly inappropriate seizure, search, and dissemination of Mr. Richardson's cellphone records. *See Richardson III*, 248 F. Supp. 3d at 102.

In their Motion to Dismiss, separate from questions of timeliness or of success on the merits, Defendants had also argued that Mr. Richardson had failed to state a claim under the Privacy Act because he had not alleged actual pecuniary damages. *See* Mot. to Dismiss [Dkt. 22]

6

at 17-18. Under the Privacy Act, monetary relief may be granted if the plaintiff has suffered "actual damages" because of the alleged violation. In *Federal Aviation Administration v. Cooper*, the Supreme Court held that under the Act "actual damages" means pecuniary damages and thus plaintiffs are barred from recovery unless they can show "some pecuniary harm." 566 U.S. 284, 296 (2012). Thus, emotional distress and other non-pecuniary damages cannot support a plaintiff's right to recovery under the Privacy Act. Having raised this argument in their Motion to Dismiss, Defendants have again raised the argument in their Motion for Reconsideration. *See* Mot. at 6-10. The Court acknowledges that, as the Board points out, the Board did make this argument in its Motion to Dismiss, and the Court did not rule on the issue in denying dismissal as to Counts Two and Six. *See* Mot. at 4-5; Reply at 3.

In his Amended Complaint, Mr. Richardson claims that both Counts Two and Six led to his suffering "adverse and harmful effects, including, but not limited to, mental distress, emotional trauma, embarrassment, humiliation, and lost or jeopardized present and future financial opportunities." SAC ¶¶ 144, 183. Elsewhere in the Complaint, Mr. Richardson also claims that, "[a]s a direct result of the defendants' actions [he] has involuntarily remained unemployed since his June 7, 2010 termination." *Id.* ¶ 84. The Court must now determine whether these allegations support claims of actual—that is, pecuniary—damages.

As this Court has previously explained, "[t]he Privacy Act does not allow a claim for damages based on reputational or emotional harm," and does not authorize damages for mental or emotional distress; "[a]s a result, Plaintiffs must specifically allege actual damages to survive a motion to dismiss for failure to state a claim." *Welborn v. IRS*, 218 F. Supp. 3d 64, 82 (D.D.C. 2016) (citing *Cooper*, 566 U.S. at 304). Although Mr. Richardson disputes the Board's characterization of his allegations as an attempt "to construe Plaintiff's Privacy Act claims into

7

[intentional infliction of emotional distress] claims," the point remains that Mr. Richardson's allegations of harm rely on claims of emotional harm and other non-pecuniary alleged damages. Opp'n at 3. Mr. Richardson's claims of "mental distress, emotional trauma, embarrassment, [and] humiliation" are insufficient to state a claim under the Privacy Act. SAC ¶¶ 144, 183.

Mr. Richardson also alleges "lost or jeopardized present and future financial opportunities." SAC ¶¶ 144, 183. The question is whether these allegations stated a pecuniary claim under the Privacy Act. The Board characterizes Mr. Richardson's claims of lost financial opportunity as "conclusory allegations," arguing that they are not a "proven pecuniary loss" as required under the Privacy Act. *See* Mot. at 8 (quoting *Cooper*, 566 U.S. at 298 ("[W]e think it likely that Congress intended 'actual damages' in the Privacy Act to mean special damages for proven pecuniary loss.")). The crux of the Board's argument is that Mr. Richardson has not alleged sufficient facts to establish that any loss of financial opportunities was caused by the alleged Privacy Act violations. The Board points to a number of cases to establish that the standard for establishing "actual damages" under the Privacy Act is, pursuant to the Supreme Court's analysis in *Cooper*, set forth in the provisions governing "special damages" under Rule 9(g) of the Federal Rules of Civil Procedure. *See* Mot. at 8. Special damages must be "specifically stated" and alleged with "particularity," and must "specify 'facts showing that such special damages were the natural and direct result' of the defendant's conduct." *Browning v. Clinton*, 292 F.3d 235, 246 (D.C. Cir. 2002) (discussing "special damages" under Rule 9(g) in a non-Privacy Act context) (internal citations omitted); *see also Welborn*, 218 F. Supp. 3d at 82 n.2 (explaining that "[t]he fact that Plaintiffs chose to spend money on credit monitoring services to prevent potential future harm does not allege actual damages attributable to the [defendant]"

and that injury based on "hypothetical future harm" could not support the allegations of harm under the Privacy Act).

The allegations in Counts Two and Six of Mr. Richardson's Second Amended Complaint concern alleged acts that occurred after Mr. Richardson's termination on June 7, 2010. Specifically, as the Board points out in its Motion for Reconsideration, according to Mr. Richardson the alleged seizure, search, and dissemination of cellphone records (Count Six) occurred in 2010 and 2011 subsequent to Mr. Richardson's termination. And the complaint does not allege that Mr. May sent Mr. Richardson's medical documents to the Maryland Commission (Count Two) until January 2015. SAC ¶ 65. Given this timing, the Court must conclude that Mr. Richardson's termination could not have been caused by the alleged acts.

The only remaining question, then, is whether Mr. Richardson has stated a claim that the alleged acts caused any *future* pecuniary loss that could be cognizable as damages under the Privacy Act. Mr. Richardson alleges that he has remained unemployed since his termination, and attributes this continued unemployment to the Board's alleged violations against him. Having reviewed Mr. Richardson's pleadings in this action, the Court can only find one specific instance that Mr. Richardson alleges to be a direct cause of his continued unemployment: the alleged falsification of a suspension notice in his personnel file. *See id.* ¶¶ 78, 81, 84-85. Mr. Richardson asserts that he "received notification by the D.C. Department of Corrections that he was ineligible for employment due to falsified information in his Board personnel file." *Id.* ¶ 85. Setting aside whether these allegations would allege sufficient causation to sustain Mr. Richardson's claims, the allegations pertain to Count Four, which the Court already dismissed, and not to Counts Two or Six, which contain no such allegations attempting to link any improper

acts by the Board to Mr. Richardson's continuing unemployment. Mr. Richardson has not alleged sufficient facts to sustain claims of actual damages under the Privacy Act.

In addition to seeking monetary damages, Mr. Richardson also seeks injunctive relief under the Privacy Act, requesting that the Court "[declare] that the Board violated the Privacy Act of 1974," "[i]nvoke its equitable powers to expunge all records or information maintained by the Board that is inaccurate and/or derogatory to Plaintiff," and enjoin the Board "from taking any further illegal and prohibited action against Plaintiff such as those atrocious behaviors alleged herein." SAC at 33. The Privacy Act provides for limited injunctive relief in suits to amend a record and suits for access to a record, but these sections of the Privacy Act are not implicated by Mr. Richardson's Counts Two and Six, which instead allege impermissible search and dissemination of records. *See Cooper*, 566 U.S. at 310 n.4 (Sotomayor, J., dissenting) ("It bears noting that the Privacy Act does not authorize injunctive relief when a suit is maintained under 5 U.S.C. § 552a(g)(1)(C) and (D). Rather, injunctive relief is available under the Act only for a limited category of suits: suits to amend a record and suits for access to a record. *See* 5 U.S.C. § 552a(g)(2), (g)(3)."). Thus, the Court concludes that no injunctive relief is available based on Mr. Richardson's allegations. None of Mr. Richardson's allegations under Count Two or Six can sustain a Privacy Act claim.

### B. Sovereign Immunity

The Board did not initially raise the issue of sovereign immunity as to the Privacy Act claims in its Motion to Dismiss or Reply. However, on Motion for Reconsideration, the Board has raised this issue, arguing that Mr. Richardson's Privacy Act claims fail because they do not establish a requisite waiver of sovereign immunity. *See* Mot. at 5. The Privacy Act, the Board argues, contains a waiver of sovereign immunity only for claims of pecuniary harm. *Id.* at

6. As the Board states in its Reply, this argument is related to the "actual damages" argument considered already. *See* Reply at 2 (describing the sovereign immunity point as a "natural outgrowth" of the damages point). Because the Court has determined that both Counts Two and Six must be dismissed because no "actual damages" have been established, and thus no claim has been stated under the Privacy Act, it need not reach the further question of what allegations would establish the necessary waiver of sovereign immunity, and whether those facts have been alleged here.

### C. Judicial Estoppel

In opposition, Mr. Richardson argues that the Board's arguments fail under the doctrine of judicial estoppel, which "precludes the Defendant from taking a position in a case that is contrary to a position in its Motion to Dismiss." Opp'n at 2. The Board responds that it has not relied on contradictory positions, but rather has asked the Court to reconsider its "actual damages" argument and has raised additional, related arguments regarding the lack of a waiver of sovereign immunity, which the Board categorizes as a "natural outgrowth" of the "actual damages" arguments. Reply at 2. The Court agrees with the Board that the doctrine of judicial estoppel does not apply here; Mr. Richardson has not explained how Defendants' arguments in support of dismissal are contradictory, nor can the Court apprehend any contradictory arguments based on its own analysis.

### IV. CONCLUSION

For the foregoing reasons, the Court will grant Defendants' Motion for Reconsideration [Dkt. 29] and will dismiss without prejudice Counts Two and Six. A memorializing Order accompanies this Opinion.

Date: January 26, 2018

                                          /s/
                              ROSEMARY M. COLLYER
                              United States District Judge